IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PJM ENTERPRISES OF MARION, | ) | Bankruptcy Case No. 08-40976 |
| INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | | |
| ROBERT E. EGGMANN, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 09-04037 |
| | ) | |
| PARKER-HANNIFIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

This matter having come before the Court on Plaintiff Trustee's Motion for Summary Judgment and Motion for Summary Judgment of Parker Hannifin Corporation; the Court, having heard arguments of counsel, having reviewed written memoranda filed by the parties, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

The material facts in this matter are not in dispute and are, in pertinent part, as follows:

1.    On June 26, 2008, PJM Enterprises of Marion, Inc. ("Debtor") filed in this Court a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*

2.    Debtor continued to operate its business as a debtor-in-possession through February 20, 2009.

3.    As of the petition date, Debtor owed Defendant approximately $164,000.

4.    Defendant would not do any work post-petition for Debtor unless Debtor paid Defendant the pre-petition amount due to Defendant.  As a result of negotiations between Debtor and Defendant, Defendant agreed to accept eighty percent (80%) of the pre-petition debt owed to Defendant in satisfaction of the pre-petition debt and as consideration for Defendant's continued work for Debtor on a cash-in-advance basis.

5.    Debtor subsequently sought this Court's approval of the agreed upon payments to be made to Defendant.

6.    On July 15, 2008, Debtor filed a Second Amended Motion for Order Authorizing Debtor to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection (the "Second Cash Collateral Motion").

7.    The Second Cash Collateral Motion sought the authority from this Court to "utilize funds that are Secured Parties's [sic] cash collateral in order to meet the Debtor's on-going regular daily operation requirements during its Chapter 11 Case."

8.      Attached to the Second Cash Collateral Motion was a cash collateral budget (the "Budget") itemizing those necessary expenditures to be paid using cash collateral, pending Court approval.

9.      The Budget "contain[ed] no expenditures that [were] not strictly necessary for an effective reorganization."

10.     The Budget contained columns for pre-petition amounts owed as well as post-petition amounts to be approved for payment.  Specifically, payment to Defendant is listed in the Budget under the column labeled "Pre-Petition Amount" for those agreed upon pre-petition amounts to be paid to Defendant.

11.     The Budget showed totals of the amounts in each of its columns.  This included a sub-total "Post-Petition Amount" to be paid to all vendors of $625,706.11. The Budget then listed two critical vendors, including Defendant, and indicated the pre-petition amount owed to each in the column of "Post-Petition Amounts" to be approved for payment.  The column was then sub-totaled again, for a total post-petition amount to be paid submitted for approval of $813,667.98.  Also in the same column was listed the projected contract revenue of $877,653.00, for net revenue of $63,985.02 (revenue less post-petition amounts requested for approval to be paid).

12.     On July 15, 2008, Notice of the Second Cash Collateral Motion and the hearing on the Second Cash Collateral Motion was served on the parties in interest and entered on the docket at docket No. 71.  All parties in interest had notice of the Second Cash Collateral Motion and all parties in interest had an opportunity to be heard at the hearing on the Second Cash Collateral Motion.

13.     On July 18, 2008, this Court held a hearing on the Second Cash Collateral Motion.   At the hearing, attorneys for Debtor and secured creditors, Farmers State Bank and the Internal Revenue Service, entered their appearances. Debtor represented that the interested parties had reached an agreement, and Debtor represented to the Court that by granting the Second Cash Collateral Motion, Debtor would be "permitted to spend cash collateral as set out in his budget . . . in the amount of $813,667.98."

14.     All interested parties directly or indirectly consented to the relief requested in the Second Cash Collateral Motion.

15.     Following that hearing, on July 21, 2008, this Court entered an Order Granting Debtor's Second Amended Motion to Use Cash Collateral and to Grant Adequate Protection (the "Second Cash Collateral Order") which authorized the use of cash collateral up to the $813,667.98 requested in the Cash Collateral Motion and set forth in the Budget.   This included payment to the Defendant of a portion of Defendant's pre-petition debt.

16.     As a result of the payments authorized by the Second Cash Collateral Order, Debtor was able to complete its contract with Massey referenced in the revenue section of the Budget.   Debtor's estate received a benefit from the use of cash collateral requested in the Second Cash Collateral Motion.

17.     On or about February 20, 2009, Debtor's Chapter 11 case was converted to a Chapter 7 case.   On or about March 3, 2009, Plaintiff was appointed as the Chapter 7 trustee in Debtor's Chapter 7 case.

18.     On April 29, 2009, Plaintiff commenced an adversary proceeding seeking to avoid that portion of the payment made by Debtor to Defendant which constituted the 80% payment on the pre-petition debt, pursuant to Sections 549 and 550 of the Bankruptcy Code, on the basis that such payment was not authorized.

19.     As set forth in their Motions for Summary Judgment, Plaintiff and Defendant stipulate that there is no genuine issue of material fact and that this matter is ripe for summary judgment.

Conclusions of Law

1.      In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy procedure 7056.   Rule 56(c) reads in part:

> (T)he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); See also:   Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 402 (7th Cir. 1998).   The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. Trautvetter v. Quick, 916 F.2d 1140, 1147 (7th Cir. 1990); In re JII Liquidating, Inc., 341 B.R. 256, 263 (Bankr. N.D. Ill. 2006) (citations omitted).   The burden is on the moving party to show that no genuine issue of material fact is in dispute.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-586,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  All reasonable inference drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion.  <u>Parkins v. Civil Constructors of Illinois, Inc.</u>, 163 F.3d 1027, 1032 (7th Cir. 1998).  "Summary judgment is not an appropriate occasion of weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial."  <u>Lohorn v. Michal</u>, 913 F.2d 327, 331 (7th Cir. 1990).

2.     This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(M) and (O).

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

4.     Plaintiff can only avoid the transfer of pre-petition funds pursuant to Section 549 of the Bankruptcy Code if the transfer was (1) made after the commencement of the debtor's case and (2) not authorized under Title 11 or by the Court.   11 U.S.C. § 549(a)(2)(B).

5.     This Court specifically authorized the Debtor to make the payment at issue in the instant adversary proceeding.   Any objections to whether Defendant was properly labeled a critical vendor should have or could have been raised in response to the Second Cash Collateral Motion.   <u>In re Kmart Corp.</u> Bankruptcy No. 02 B 02474, 2006 WL 952042 (Bankr. N.D. Ill. Apr. 11, 2006) (holding that a post-petition transfer authorized by the Court, even if authorized erroneously, cannot be avoided unless the order authorizing the payment was stayed pending appeal).

6.      No objection was made at or before the hearing on the Second Cash Collateral Motion upon presentation of the Budget, and this Court's Second Cash Collateral Order was not challenged, appealed, stayed, or reversed.

7.      All parties in interest, specifically including secured creditors, Farmers State Bank and the Internal Revenue Service, consented, directly or indirectly, to the use of cash collateral for the purposes set forth in the Budget, including making payment to Defendant.

8.      Debtor's estate received a benefit as a result of the authorization of the use of cash collateral and the payment to Defendant of a portion of its pre-petition debt.

9.      Based upon this Court's Second Cash Collateral Order granting authority to Debtor to make certain pre-petition debt payments and to make payments to other vendors as set forth in the Budget in order for Debtor to continue operating, the Debtor transferred $253,161.37 to Defendant on or about July 21, 2008.  This constituted payment of 80% of the pre-petition debt, and an advance payment for post-petition work that Defendant was to perform, and did perform, for Debtor.

10.      As a matter of law, Plaintiff is not entitled to avoid the pre-petition payment made to Defendant because the payment was authorized by this Court in its Second Cash Collateral Order, which authorized Debtor "the right to use cash collateral up to $813,667.98 per Debtor's proposed budget which has been previously submitted to this Court."

11.    The transfer to Defendant at issue in this case was included in the Budget, was clearly identified as a pre-petition payment, and, therefore, was authorized by this Court for purposes of Section 549 of the Bankruptcy Code.

12.    Because the transfer at issue was authorized by the Court, Plaintiff cannot avoid the transfer pursuant to Section 549.  Further, because the transfer cannot be avoided under Section 549, Defendant is not liable to Plaintiff for the amount at issue under Section 550 of the Bankruptcy Code.

13.    Therefore, Plaintiff Trustee's Motion for Summary Judgment must be DENIED, the Motion for Summary Judgment by Parker Hannifin Corporation should be GRANTED, and the Complaint in this action should be DISMISSED with prejudice.

ENTERED:   January 12, 2010.


                                            /s/Gerald D. Fines
                                            GERALD D. FINES
                                      United States Bankruptcy Judge